## COLTON v. KENNEDY.

(Supreme Court, Trial Term, New York County. October, 1911.)

1. SALES (§ 6*)—SALE OR PLEDGE.

The K. Co. gave its note to plaintiff, depositing therewith 10 of its second mortgage bonds as collateral security. The mortgage was afterwards foreclosed, and before sale defendant agreed that if plaintiff would not bid at the sale, and if defendant should bid in the corporate property at a certain price over the amount of the liens prior to the second mortgage, he would reorganize the company, by forming a new corporation to take the property purchased by him, and would then deliver to plaintiff 10 of the first mortgage bonds issued to take the place of the second mortgage bonds. Plaintiff thereupon delivered his bonds to the person conducting the sale, and defendant bid in the property and had the benefit of the second mortgage bonds delivered up by plaintiff in paying the amount of his bid. Defendant conveyed the property purchased to a new corporation, but refused to deliver to plaintiff the 10 first mortgage bonds as agreed. *Held*, that the agreement between plaintiff and defendant was really a sale of the bonds to defendant, upon his agreement to pay for them by protecting plaintiff from loss by giving him other bonds in return, so that plaintiff could recover from defend-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

ant the amount of his note upon defendant's breach of his agreement to deliver the bonds.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 14; Dec. Dig. § 6.*]

2. CONTRACTS (§ 130*)—CONSIDERATION—CONTRARY TO PUBLIC POLICY.

Plaintiff's agreement not to bid at a mortgage foreclosure sale was not void, as contrary to public policy, as an agreement to suppress competition; its primary purpose being to enable defendant to pay plaintiff's claim out of the corporate property.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 654–658; Dec. Dig. § 130.*]

3. CONTRACTS (§ 56*)—CONSIDERATION.

Plaintiff's agreement to refrain from bidding at the foreclosure sale was a sufficient consideration for defendant's agreement to purchase the corporation's property, reorganize it, and deliver certain bonds to plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 344, 349–353; Dec. Dig. § 56.*]

4. DAMAGES (§ 120*)—MEASURE—BREACH OF CONTRACT.

Plaintiff's measure of damages for defendant's breach of his contract to deliver first mortgage bonds to plaintiff was the amount of the note executed to plaintiff by the corporation.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.*]

5. DAMAGES (§ 189*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action for breach of defendant's contract to bid in property of a corporation, reorganize the company, and deliver to plaintiff 10 first mortgage bonds, of the par value of $1,000 each, evidence *held* to show prima facie that the value of the bonds defendant refused to deliver was at least $6,104, the amount of the verdict.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 189.*]

Action by Frank B. Colton against Arthur Kennedy. On defendant's motion for a new trial. Motion denied.

John Thomas Smith, for the motion.
A. P. Bachman, opposed.

BROWN, J. February 5, 1903, the International Kaolin Company executed and delivered to the plaintiff its promissory note for $6,104.-51, payable on demand, and deposited with the plaintiff 10 second mortgage bonds, for $1,000 each, given by the International Kaolin Company, as collateral security for the payment of such note. On December 28, 1906, a judgment of foreclosure and sale under such mortgage had been rendered, and a sale of all the property of the mortgagor was advertised for January 7, 1907, when it was agreed by and between the plaintiff and the defendant that the plaintiff should abstain from bidding at such sale, and that the defendant should bid in such property at a price not exceeding $37,000 over the amount of the liens prior to such second mortgage; that, if the defendant by such bid should become the purchaser of such property, he (the defendant) would reorganize the Kaolin Company, by forming a new corporation, which would take over the property so purchased by him, and that a first mortgage would be executed to secure a bond issue

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of $100,000, and that defendant would deliver to plaintiff 10 of such first mortgage bonds, of $1,000 each, to take the place of the 10 second mortgage bonds then held by the plaintiff as collateral to said note. The plaintiff did abstain from such bidding, the defendant did purchase such property by bidding $30,000 therefor over the prior liens, the plaintiff delivered his 10 bonds, of $1,000 each, to the person conducting such sale, they were applied upon the defendant's purchase, and the defendant had the benefit of the same in paying the amount of his bid at such foreclosure sale. The defendant organized a new corporation, named the Florida Clay Company, and conveyed the property so purchased with plaintiff's bonds to such corporation. The defendant refused to deliver to plaintiff the 10 first mortgage bonds, of $1,000 each, upon an issue of $100,000, as he had agreed.

[1] It thus appears that the property of the International Kaolin Company has been sold and that company is without assets, that the defendant acquired such property and has had the benefit of all the interest of the plaintiff in the bonds originally held by him, that the plaintiff has lost all his collateral, that his note is of no value, and that he is without relief, unless the defendant became obligated to see to it that the plaintiff should be protected. The defendant has conveyed all the property purchased with plaintiff's collateral to the Florida Clay Company, the plaintiff has no claim against the new corporation, the plaintiff's note against the International Kaolin Company is of no value, the plaintiff cannot follow the property into the hands of defendant's grantees, and his only recourse is to secure such damages from the defendant as he has suffered by reason of defendant's failure to keep his agreement. The defendant had ample opportunity to procure for plaintiff the bonds he had agreed to deliver, by refusing to convey to his grantees until he had received the bonds he agreed to deliver to plaintiff. Plaintiff's interest in the bonds held by him as collateral was a sum equal to the amount due upon his note against the International Kaolin Company. This amount was virtually paid to the defendant, and used by him in paying the amount of his bid at the foreclosure sale. The plaintiff, by giving the defendant the benefit of such interest in the bonds, lost his right to participate in the proceeds of the foreclosure sale. The defendant has thus taken from the plaintiff the amount of such note, with interest. The transaction was virtually a sale by plaintiff to the defendant of the bonds, the defendant agreeing to pay for them by protecting plaintiff from loss. The plaintiff was authorized by his pledgor to make such a sale. The plaintiff has lost the amount of his note and interest thereon. It is impossible to see why the defendant should not repay to plaintiff such sum.

[2, 3] The agreement of the plaintiff that he would abstain from bidding at the foreclosure sale was not void, as against public policy. It was not an agreement to suppress competition. Its primary purpose was not to enable the defendant to secure the property at less than its fair value, but rather for the purpose of enabling defendant to pay plaintiff's claim out of the property. The agreement to abstain from bidding was a sufficient consideration to uphold defendant's

agreement. Hopkins v. Ensign, 122 N. Y. 144, 25 N. E. 306, 9 L. R. A. 731.

[4] The defendant exacted from the plaintiff an agreement that upon the payment of the note the proposed new bonds to be issued by the new company would be surrendered to the new company. It thus appears that the defendant knew that the plaintiff's only interest in both the old and the new bonds was the amount due upon his note, and that if the foreclosure sale was had, and plaintiff's bonds used to pay the amount of defendant's bid on such sale, the plaintiff's loss would be the amount due on such note. The plaintiff having lost the amount of his note by reason of defendant's breach of his contract, that amount must measure his damages. The defendant having received from the plaintiff the bonds and used them as money in paying for the property purchased at the foreclosure sale, he thereby received from plaintiff the plaintiff's interest therein, which was the amount of the plaintiff's note, which sum represents the benefit, gain, and advantage to the defendant from the plaintiff, and it correctly measures the defendant's liability. The payment of the amount of the note by the defendant out of the property received by him by means of plaintiff's bonds can work no hardship to the defendant. Such payment will discharge the note.

The prior liens against the property amounted to $47,000. The defendant agreed to protect the property at the foreclosure sale to the amount of $37,000 over and above such prior liens. The amount of the second mortgage bonds outstanding, including those held by the plaintiff as collateral, was $30,000. Had the defendant bid the amount he agreed to bid, there would have been realized on the sale $7,000 more than sufficient to pay plaintiff's claim. The amount that defendant bid on the sale produced sufficient moneys to have enabled plaintiff to realize in full upon his claim. The plaintiff, at defendant's request, instead of retaining his bonds and participating in such proceeds of sale, turned them over to the defendant. At that moment the bonds were worth at least the amount of plaintiff's claim. The defendant, by the agreement which he subsequently refused to perform, thus caused plaintiff to lose the amount of his claim. The amount of the note is thus seen to be the value of the bonds delivered by plaintiff, and is the precise sum had and received by the defendant from the plaintiff.

If the amount of the defendant's bid for the property of the International Kaolin Company on the foreclosure sale in the open market be accepted as evidence of the fair market value, we have the sum of $77,000 as the value of the property upon which the defendant agreed to issue $100,000 of first mortgage bonds, $10,000 of which he agreed to deliver to plaintiff. Such bonds would be worth $7,700, $1,700 more than the then amount due the plaintiff. The defendant having agreed to bid $37,000 above the existing prior liens of $47,000 for the property, and he having bid $30,000 above such liens, viz., the sum of $77,000, it is difficult to see how he can be heard to say that the property was not worth at least that sum. As the verdict as directed was for $6,104.51 and interest, it appears that the plaintiff has

been awarded the value of the bonds which the defendant refused to deliver in pursuance of his contract, not exceeding the amount due on his note.

[5] Upon the assumption that, within Industrial & General Trust v. Tod, 180 N. Y. 215, 73 N. E. 7, and other authorities cited by defendant, the proper measure of plaintiff's damage is the value of the bonds the defendant refused to deliver, it is apparent that the defendant cannot complain. The value of the 10 bonds, of $1,000 each, of an issue of $100,000, depends upon the value of the property mortgaged to secure such bonds. It is believed that the selling price in the open market upon foreclosure sale on defendant's bid is some evidence as against the defendant of the fair value of the property, and establishes a basis from which the value of the bonds can be ascertained. Such evidence certainly establishes prima facie that the bonds would have been worth at least $6,104.51.

No question is presented as to the rights of the pledgor, the International Kaolin Company. The verdict directed was for the correct amount, and defendant's motion must be denied.